**Docket No. 12-55797**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

**DARRIN ERLICHMAN**,

*Plaintiff-Appellant,*

v.

**STATER BROS. MARKETS, UNITED FOOD &
COMMERCIAL WORKERS UNION, LOCAL UNION 324**

*Defendants-Appellees.*

---

*Appeal from a Decision of the United States District Court
for the Central District of California
No. CV 10-01803 CJC (PJWx)
Honorable Cormac J. Carney, District Judge Presiding*

---

**ANSWERING BRIEF OF DEFENDANT-APPELLEE
STATER BROS. MARKETS**

---

Brendan W. Brandt
Andrew Ross
**VARNER & BRANDT LLP**
3750 University Avenue, Suite 610
Riverside, CA 92501-3323
(951) 274-7777

*Attorneys for Defendant-Appellee Stater Bros. Markets*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee STATER BROS. MARKETS hereby certifies that it is a wholly-owned subsidiary of STATER BROS. HOLDINGS, INC. No publicly held corporation owns 10% or more of STATER BROS. MARKETS or STATER BROS. HOLDINGS, INC.

# TABLE OF CONTENTS

I.     JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.    Jurisdiction of the District Court. . . . . . . . . . . . . . . . . . . . 1

        B.    Jurisdiction of the Court of Appeals. . . . . . . . . . . . . . . . 1

        C.    Timeliness of Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW. . . . . . . . . . 1

III.   STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V.    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.   SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VII.  LAW AND ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.    Judge Carney's Order Should be Affirmed Because the
              Appellant Has Not Presented any Showing of Error by the
              District Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.    Appellant Has Not Provided Any Evidence of Duress. . . . 10

        C.    Appellant's Claims are Time-Barred. . . . . . . . . . . . . . . . . 17

        D.    The Granting of the Union's Motion for Summary
              Judgement Bars Appellant's Claim of Breach of the
              Collective Bargaining Agreement. . . . . . . . . . . . . . . . . . . 24

        E.    Appellant's Termination Was Not Wrongful. . . . . . . . . . 25

VIII. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

## CASES

*Allis-Chalmers Corp. v. Lueck*
   471 U.S. 202 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 24

*Arnold v. 1199 SEIU*
   420 Fed. Appx. 48, 50 (2d Cir. N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . 25

*Brookwood v. Bank of America*
   45 Cal. App. 4th 1667  (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Callie v. Near*
   829 F.2d 888 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Casey v. Proctor*
   59 Cal. 2d 97 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Christian Legal Soc. Chapter of Univ. of Calif. v. Wu*
   626 F3d 483 (9th Cir. 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*DelCostello v. Int'l Brotherhood of Teamsters*
   462 U.S. 151 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gen. Motors Corp. v. Superior Court*
   15 Cal. Rptr. 2d 622 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Holland Quest v. St. Francis Medical Center*
   872 F.Supp. 723 (C.D. Cal 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Hulsey v. Elisnore Parachute Center*
   168 Cal. App. 3d 333 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Jefferson v. Department of Youth Authority*
   28 Cal.4th 299 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kelly v. Von's Companies, Inc.*
   67 Cal. App.4th 1329 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Lingle v. Norge Div. of Magic Chef, Inc.*
 486 U.S. 399 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Moore v. Local Union 569 of the IBEW et al.*
 989 F.2d 1534 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Morta v. Korea Ins. Corp.*
 840 F.2d 1452 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Newberry v. Pacific Racing Ass'n*
 854 F.2d 1142 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Rich & Whillock, Inc. v. Ashton Development,* Inc.
 157 C.A. 3d 1154 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Russell v. Puget Sound Tug & Barge Co.*
 737 F.2d 1510 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sekiya v. Gates*
 508 F3d 1198 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sicor Ltd. v. Cetus Corp.*
 51 F3d 848 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Skrbina v. Fleming Co.*
 53 Cal. Rptr. 2d 481 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

*Stevenson v. Sup. Ct.*
 16 Cal.4th 880 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Stone v. Writer's Guild of America West, Inc.*
 101 F.3d 1312 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tarpy v. County of San Diego*
 110 Cal. App. 4th 267 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Travelers Cas. & Sur. Co. of America v. Brennete*
 551 F3d 1132 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Kama*
        394 F3d 1236 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Upton v. Tribilcock* (1875)
        91 U.S. 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ventura Packers, Inc. v. F/V Jeanine Kathleeen*
        305 F3d 913 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## STATUTES

29 U.S.C. §185 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

FRAP 28(a)(9)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

FRCP 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17

## OTHER AUTHORITIES

"Renege" Merriam-Webster.com. 2011.
        http://www.merriam-webster.com/dictionary/renege (17 January 2013) . . 17

# I.     JURISDICTIONAL STATEMENT

## A.     Jurisdiction of the District Court

Defendant-Appellee Stater Bros. Markets ("STATER") agrees with Plaintiff-Appellant Darrin Erlichman ("Appellant") that the district court had original jurisdiction over this action.

## B.     Jurisdiction of the Court of Appeals

STATER agrees with Appellant that this Court of Appeals has jurisdiction over Appellant's appeal of the district court's order granting STATER's Motion for Summary Judgement (see Excerpts of Records, Volume 1, page 1; hereinafter references to the Excerpt will be cited as [volume number] ER [page number]).

## C.     Timeliness of Appeal

STATER agrees with Appellant that the notice of appeal was timely filed on April 30, 2012.

# II.     STATEMENT OF ISSUES PRESENTED FOR REVIEW

A.     Whether the district court properly determined that the Settlement Agreement signed by Appellant barred his claims against STATER.

B.     Whether there were sufficient other grounds upon which the district court could have granted STATER's Motion for Summary Judgement.

## III.    STATEMENT OF THE CASE

STATER agrees that the Statement of the Case set forth in Appellant's Opening Brief [Appellant's Opening Brief, pages 7-11] is an accurate retelling of the procedural history of this matter.

## IV.    STATEMENT OF FACTS

The relevant material facts in this matter are undisputed. Appellant was a STATER employee from March 6, 2000, until his termination on March 31, 2010. [XI ER 2681]  Appellant was a member of defendants-appellee United Food & Commercial Workers Local Union 324 ("the Union") [XI ER 2681] and his employment was governed by a Collective Bargaining Agreement ("CBA") [XI ER 2681] .  Under the terms of the CBA, Appellant could only be terminated "for good cause". [XI ER 2720, Article 3, Section A(1)]

STATER'S retail operations are governed by a set of Rules and Regulations (the "Rules"), regularly provided to employees for their review.  [SER 3, 7-8]  The Rules state that any employee found to be in violation of the Rules shall be subject to immediate disciplinary action up to and including termination. [SER 2, 7] Paragraph 16 of the Rules requires employees to "Treat all of our customers in a courteous manner . . . Give all our customers your complete attention.  Rudeness,

2

inattention, or customer complaints will not be tolerated." [SER 2, 7]  Appellant received, read, and understood the Rules [SER 13-14], and admits that poor customer service was grounds for termination. [SER 20, lines 19-25]

During the course of his employment with STATER, Appellant received verbal reprimands, confirmed in writing, for poor customer service on August 30, 2000, November 26, 2001, May 14, 2003, May 3, 2006, and June 9, 2009. [SER 3-4, 45-49]  Appellant was issued written warning notices for unprofessional conduct and customer complaints on July 2, 2008 and June 26, 2009.  [SER 4, 50-51] Appellant *does not dispute receiving these warnings*, but rather claims they somehow "expired." [Appellant's Opening Brief, pages 62-63]

Appellant's termination was the result of two separate incidents.  The first occurred on March 30, 2010, when a customer approached two STATER managers and complained that Appellant had said that he was "too busy" to help the customer.  [SER 53-54, 57]  The second incident occurred on March 24, 2010, but was not brought to STATER' attention until March 31, 2010, when STATER received a complaint letter from another customer. [SER 54, 59-60]  Appellant *does not dispute that these complaints were made,* he simply claims they were "frivolous and unfounded." [Appellant's Opening Brief, page 19]

Upon receiving the March 29, 2010 letter, Appellant's file was reviewed

3

and Appellant was placed on indefinite suspension on March 31, 2010. Appellant was subsequently terminated by STATER on April 7, 2010. [SER 4, ¶14]

After Appellant's termination, he was advised by the Union on May 11, 2010, that the Union would not arbitrate his grievance. [X ER 2304, ¶¶21, 23; X ER 2528] However, the Union did arrange another meeting between STATER and Appellant which was held on May 26, 2010. [X ER 2532] After the May 26, 2010 meeting, STATER agreed to allow Appellant to "voluntarily quit" as opposed to being terminated, in return for waiving any potential claims the employee may have against STATER or the employee's union. This allows the terminated employee to tell prospective employers that he quit his employment, instead of saying that he was terminated. [SER 4] STATER signed the Settlement Agreement on May 28, 2010 and provided it to the Union, which in turn provided it to Appellant who signed it as well. [X ER 2532]

On November 24, 2010, Appellant filed suit in this court against the Union and STATER. [XI ER 2679] Two of Appellant's three causes of action were alleged against STATER: the first, for breach of the CBA, and the third, for wrongful termination. The second cause of action was only against the Union.

The Union moved for summary Judgement and Plaintiff's claims against the Union were dismissed by Judge Carney on May 2, 2011. [I ER 36-44]

4

STATER filed a FRCP 12(b)(6) Motion seeking to dismiss Plaintiff's claims against STATER as being time-barred. [XI ER 2643-2655]  On May 17, 2011, Judge Carney denied this motion, finding that it was not apparent from the face of the Complaint whether or not Appellant's claims were time barred as it could not be determined from the face of the complaint on what date Appellant was advised by the Union that it would not arbitrate his claim.  [VIII ER 1779-1781] STATER subsequently filed a Motion for Summary Judgement [VIII ER 1731-171755; SER 1-152] which was granted by Judge Carney on March 29, 2012. [I ER 1-7, hereinafter the "Order"]

## V.    STANDARD OF REVIEW

A district court's decision to grant summary judgement is reviewed *de novo*. [*Travelers Cas. & Sur. Co. of America v. Brennete*, 551 F3d 1132, 1137 (9th Cir. 2009)] Accordingly, this Court may affirm Judge Carney's Order granting summary judgement to STATER on any ground that has support in the record, whether or not relied upon by the district court. [*Sicor Ltd. v. Cetus Corp.*, 51 F3d 848, 860, fn. 17 (9th Cir. 1995).  The reviewing court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied

the relevant substantive law. [*Ventura Packers, Inc. v. F/V Jeanine Kathleeen*, 305 F3d 913, 916 (9th Cir. 2002)]

## VI.    SUMMARY OF ARGUMENT

This Court should affirm Judge Carney's Order because Appellant has offered no valid argument or authority as to why the Settlement Agreement he voluntarily signed, and which gave him something of value (a voluntary quit as opposed to a termination) is not valid and binding.  Appellant's Opening Brief fails to offer any argument or authority as to why Judge Carney's Order below was in error, abandoning his original arguments in favor of repeating vague and unsupported allegations which Judge Carney rejected, twice, below.

Even if the Settlement Agreement were somehow invalid or subject to recision, Judge Carney's Order should still be affirmed on the basis of the other arguments stated in STATER's Motion for Summary Judgement.  First, Appellant's claims are time barred by the six-month statute of limitations applicable to hybrid claims.  Second, his first cause of action is barred by the granting of the Union's separate Motion for Summary Judgement.  And finally, Appellant's termination was not wrongful as he admits (1) that the customer complaints in question were made, (2) that such complaints were valid grounds for

termination, and (3) that he was in fact suspended and terminated because STATER received these customer complaints.

## VII.  LAW AND ARGUMENT

### A.    Judge Carney's Order Should be Affirmed Because the Appellant Has Not Presented any Showing of Error by the District Court

The Settlement Agreement at issue was executed by STATER, the Union, and Appellant on or about May 28, 2010. [SER 77] It is a very simple and straightforward document, providing that in return for allowing Appellant to tell future employers that he quit his employment at STATER (as opposed to having been terminated), Appellant agreed to waive and release "any and all claims of any nature whatsoever" that he had against STATER and the Union arising out of Appellant's termination. [SER 77]  Judge Carney described the Settlement Agreement as "a concise, one page document, that expressly and unambiguously provided that Mr. Erlichman understood that he was waiving all claims against Stater Bros." [I ER 6]

In opposing STATER's Motion for Summary Judgement in the district court below, Appellant made two, and only two, arguments, attacking the validity of the Settlement Agreement.  First, he argued that the Settlement Agreement was invalid

7

because he did not read it when he signed it and that the Union failed to explicitly explain to him what he was releasing by signing the document. [V ER 1001-1004] Second, he claimed the Settlement Agreement was not supported by adequate consideration. [V ER 1004-1005]

A settlement agreement and release is a contract, subject to the rules of interpretation for contracts. [*Gen. Motors Corp. v. Superior Court,* 15 Cal. Rptr. 2d 622, 624-25 (1993)] "Release, indemnity, and similar exculpatory provisions are binding on the signatories and enforceable so long as they are . . . 'clear, explicit and comprehensible in each [of their] essential details.'" [*Skrbina v. Fleming Co.,* 53 Cal. Rptr. 2d 481, 490 (1996)] In the absence of fraud, overreaching or excusable neglect, one who signs an instrument may not avoid the impact of its terms by claiming that he failed to read the instrument before signing it. [*Hulsey v. Elisnore Parachute Center,* 168 Cal. App. 3d 333, 339 (1985)]

In *Casey v. Proctor,* 59 Cal. 2d 97 (1963), the court held that failure to read a release or failure to understand the scope of the release did not preclude enforcement of the release. Similarly, in *Brookwood v. Bank of America*, 45 Cal. App. 4th 1667 (1996), an employee was bound by a contractual arbitration provision regardless of whether she was aware of said provision when she signed her employment contract.

As the U.S. Supreme Court explained long ago:

> "It will not do for a man to enter a contract and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission." [*Upton v. Tribilcock* (1875) 91 U.S. 45, 50]

In rejecting Appellant's argument regarding his alleged failure to read the Settlement Agreement, Judge Carney cited to *Morta v. Korea Ins. Corp.*, 840 F.2d 1452, 1457 (9th Cir. 1988), a case directly on point where this Court upheld a release despite the plaintiff *not having read it* and being mistaken as to its contents. [I ER 6] Nowhere in his Opening Brief does Appellant distinguish or even refer to *Morta*, the central authority upon which Judge Carney based his ruling. In fact, Appellant appears to have abandoned this line of argument entirely as it is not raised or argued anywhere in Appellant's Opening Brief.

In both of the cases cited by Judge Carney, *Morta*, supra, and *Casey v. Proctor*, supra, [I ER 6] it was held that the failure by a plaintiff to read a release, or even if read, to understand it, was a failure on the part of the *plaintiff*, not the other party, and as such was not grounds for rescission of the release. Judge Carney, in his earlier ruling on the Union's Motion for Summary Judgement, had previously found that Plaintiff was capable of both reading and understanding the

9

terms of the Settlement Agreement:

> "As the record demonstrates, Mr. Erlichman had something to gain by accepting the settlement because it allowed him to obtain a voluntary quit in place of a discharge.  Although Mr. Erlichman has alleged that Local 324 representatives instructed him to sign the settlement without advising him of the legal ramifications and that he only "glanced at the document," he has not denied that he was competent and literate at the time he signed the agreement, and the agreement could not have been more clear.  It was a one page document that expressly and unambiguously provided that Mr. Appellant understood that he was waiving all claims against Local 324 and that Local 324 had fully and fairly represented him." [I ER 43]

Judge Carney similarly fully considered, and rejected, Appellant's second argument (which Appellant has also apparently abandoned on appeal), that the Settlement Agreement was not supported by adequate consideration. [V ER 1004-1006]  Judge Carney rejected this argument based on Appellant's own deposition testimony that the voluntary quit had significant value to him in regards to his future employability. [I ER 6]

Since Appellant's Opening Brief does not challenge or even discuss these bases for Judge Carney's ruling, Appellant has waived his right to challenge them. [*United States v. Kama*, 394 F3d 1236, 1238 (9th Cir. 2005)] For that reason alone Judge Carney's ruling should be sustained.

### B.    Appellant Has Not Provided Any Evidence of Duress

Rather than addressing the actual bases of Judge Carney's ruling, Appellant

offers a litany of unsupported assertions and irrelevant authorities in the hopes that if he makes enough noise, this Court will think there is some merit to Appellant's claims of "duress." Appellant made these same noises in the court below, and Judge Carney specifically held that:

> "Mr. Erlichman has not presented any evidence to indicate that the Settlement Agreement was entered into as a result of fraud, duress, or coercion.  While Mr. Appellant's opposition includes conclusory allegations of "overreaching" and "connivance" by Stater Bros. and Local 324, he provides no evidence to substantiate the "serious issues" he claims exist." [I ER 6]

Appellant's Opening Brief similarly fails to offer any substantiating evidence.

Appellant begins by citing to *Callie v. Near*, 829 F.2d 888 (9th Cir. 1987) and *Russell v. Puget Sound Tug & Barge Co.*, 737 F.2d 1510 (9th Cir. 1984) [Appellant's Opening Brief, page 56] in support of the claim that an evidentiary hearing is required where the material facts concerning the existence or terms of a settlement agreement are in dispute.  As there is no dispute regarding the existence or terms of the Settlement Agreement, just to its validity, and insofar as Appellant never requested such a hearing in the court below in regards to STATER's Motion for Summary Judgement, only as to the Union's motion, these authorities are irrelevant as to the Order and it is unclear why Appellant raises this issue.

11

Appellant then mis-cites to *Rich & Whillock, Inc. v. Ashton Development, Inc.*, 157 C.A. 3d 1154 (1984) [Appellant's Opening Brief, page 58] for the standard of his duress argument. That standard applies to affirmative claims for economic duress. Since Appellant is not making such a claim against STATER, the discussion of "elements" that follows over the next few pages of Appellant's Brief is irrelevant.

The appropriate standard for Appellant's argument is actually found in *Tarpy v. County of San Diego*, the matter cited by Appellant immediately prior to *Rich*. [Appellant's Opening Brief, page 57] As stated in *Tarpy*, economic duress does not necessarily involve an unlawful act, but may arise from an act that is so coercive as to cause a reasonably prudent person, faced with no reasonable alternative, to agree to an unfavorable contract. *[Tarpy v. County of San Diego*, 110 Cal. App. 4th 267, 277 (2003); see also *Rich & Whillock, Inc. v. Ashton Development, Inc*., supra, at 1158 (indicating that the act must be "wrongful")]

What then does Appellant claims was the "wrongful" act constituting duress? How exactly was Appellant "coerced?" Appellant's Brief fails to answer these questions, and by doing so waives this argument as well.

Under his heading of "Coercive Wrongful Act Element,"[Appellant's Opening Brief, page 58] Appellant claims a "pattern and practice" of STATER

12

and the Union resolving employee grievances through the use of similar settlement agreements existed [Appellant's Opening Brief, page 58-59], yet Appellant cites to no evidence in his Opening Brief that this "pattern and practice" even existed, let alone that it was "wrongful" or in any way "coerced" Appellant. Appellant simply makes the unsupported statement that this "pattern and practice" was coercive without any supporting evidence or authority.

This is exactly what Appellant did in his Oppositions to STATER and the Union's Summary Judgement motions below. Judge Carney properly rejected this argument then [I ER 3, footnote 2, I ER 10-12] and Appellant's bare assertions of a "practice" with no evidence, argument, or authority as to how this alleged "practice" constituted duress of Appellant is no more convincing now then it was in the court below.

A summary assertion of an argument without support fails to preserve that issue on appeal. Such issues are deemed abandoned. [*Christian Legal Soc. Chapter of Univ. of Calif. v. Wu*, 626 F3d 483, 487-488 (9th Cir. 2010 – "judges are not like pigs, hunting for truffles buried in briefs" (internal quotes omitted)] Accordingly, Appellant's lack of any explanation as to how, exactly, he was "coerced" has waived this issue.

Appellant then states that the Settlement Agreement does not contain a

13

waiver of unknown claims [Appellant's Opening Brief, page 59], but as with so much of Appellant's Opening Brief, he fails to explain what relevance this has to the matter at hand.  The issue before this Court is not whether an "unknown claim" was released. The Settlement Agreement waived and released "the UNION and the COMPANY [STATER] from any and all claims of any nature whatsoever to the date hereof which the undersigned [Appellant] ever had or now has, for whatever reason, against the UNION or the COMPANY arising out of the MEMBER's termination, or in connection with the MEMBER's termination with his/her Employer." [SER 77] Claims arising out of Appellant's termination are exactly what Appellant alleged in the court below. [IV ER 849, XI ER 2679, 2686-2688] As Appellant has not presented any argument as to how waiver of unknown claims is at issue before this Court, this argument is irrelevant and should be deemed waived.

Appellant's next section, "Reasonable Alternatives Element" [Appellant's Opening Brief, page 59] is equally unhelpful.  What "financial ruin" did Appellant face if he did not sign the Settlement Agreement?  How would not signing the Settlement Agreement prevent him from finding a job?  Appellant was certainly free to look for work in the absence of the Settlement Agreement, he just needed to do so by honestly stating that he had been terminated from his employment.

14

Here again, he fails to explain his argument or to offer any evidence or authority in support, and in failing to do so waives this argument as well.

It is interesting to note that in making this argument, Appellant entirely undercuts his original argument in the court below as to lack of consideration, which is likely why Appellant has abandoned this issue on appeal. Appellant admitted at deposition that the "voluntary quit" status was valuable to him because he did not think he could find another job if he had a termination on his record. [SER 41, line 13-16]

It would be helpful if Appellant were consistent in his arguments. During his lengthy recitation of the background of this matter, Appellant cited to his own Declaration in which he stated that he was never informed of the ramifications of the Settlement Agreement and that he signed the Settlement Agreement because he needed to find a job. [Appellant's Opening Brief, page 25] Yet now, thirty-five pages later, Appellant claims that the Appellee-Respondents "allayed the apprehensions of Appellant by informing him that his grievance had no merit and that if he wanted to have a "voluntary quit" he had to sign the agreement. [Appellant's Opening Brief, page 60] How, if Appellant's concerns were "allayed," was he simultaneously "coerced?" Particularly given Appellant's testimony that when he was given the Settlement Agreement to sign, the Union's

15

representative "never said anything." [SER 39, line 6] Appellant was therefore someone simultaneously "coerced" and had his suspicions "allayed" without a word being said to him.

As noted previously, a written release generally extinguishes any obligation covered by its terms, provided it has not been obtained by fraud, deception, misrepresentation, duress or undue influence. [*Skrbina v. Fleming Companies,* supra, at 1366]  When a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents and estopped from saying that its provisions are contrary to his intentions or understanding. [*Jefferson v. Department of Youth Authority,* 28 Cal.4th 299, 303 (2002)]  Appellant has not produced any evidence, argument, or authority either in the district court below or in his Opening Brief sufficient to create a triable issue as to whether Appellant was under any duress at the time he knowingly and willingly executed the simple, one-page Settlement Agreement.

Instead, Appellant has presented nothing in his Brief but bare assertions, unaccompanied by any analysis and devoid of supporting caselaw.  Such "argument" falls far short of the minimum standard for an Appellant's Brief [FRAP 28(a)(9)(A); see also *Sekiya v. Gates*, 508 F3d 1198, 1200 (9th Cir. 2007)]

In a moment of rare honesty, Appellant admits that what he wants to do is to

16

"renege on the agreement" he made. [Appellant's Opening Brief, page 60] "Renege" is an interesting choice of terminology. "To renege" means to go back on a promise or commitment. ["renege." Merriam-Webster.com. 2011. http://www.merriam-webster.com/dictionary/renege (17 January 2013)] That is exactly what Appellant is trying to do, to go back on his promise without any legal justification. Judge Carney would not allow Appellant to renege on his agreement [I ER 7], and neither should this Court.

Since Appellant has not presented any valid argument or evidence demonstrating why Judge Carney's Order was in error, that Order should be sustained and Appellant's appeal denied.

### C.     Appellant's Claims are Time-Barred

Prior to the filing of its Summary Judgement Motion, STATER filed a FRCP 12(b)(6) Motion seeking to dismiss Plaintiff's claims against STATER as being time-barred. [VI ER 2590] Appellant's claims were brought under §301 of the Labor Management Relations Act of 1947 (29 U.S.C. §185). [XI ER 2682, ¶7] Such claims are typically referred to as "hybrid" claims where the employee effectively files two suits: one against the employee's union and one against his employer. [*Moore v. Local Union 569 of the IBEW et al.*, 989 F.2d 1534, 1541 fn.2 (9th Cir. 1993)] The statute of limitations period of such suits is six months.

17

[*DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 172 (1983)] The six-month period begins to run when the employee knows, or should have known, of the alleged wrongdoing, in this case, that the Union would not process Appellant's termination grievance to arbitration. [*Stone v. Writer's Guild of America West, Inc.*, 101 F.3d 1312, 1314 (9th Cir. 1996)]

Judge Carney denied that motion on the grounds that STATER was unable to establish from the face of Plaintiff's Complaint when Plaintiff was informed by the Union that it would not arbitrate his grievance, the triggering event for the six month limitations period, stating that:

> "Mr. Erlichman knew or should have known of alleged wrongdoing in May of 2010 when Local 324 informed him that it would not arbitrate his claim [citations omitted]. It is not apparent from the face of the Complaint that Mr. Erlichman's §301 claim against Stater Bros. is time barred *because the Complaint does not specify when in May 2010 Local 324 informed him that it would not arbitrate his grievance*." [VIII ER 1781(emphasis added)]

Appellant claims the Union informed him of the decision not to arbitrate his claim on *May 26, 2010* [Appellant's Opening Brief, page 25], a date which conveniently allows Appellant to avoid the six-month deadline. However, the sole evidence cited by Appellant for this date is his own self-serving Declaration [III ER 396] which is contradicted not only by the Declaration of the Union's Field Director which was submitted in support of the Union's Summary Judgement

18

motion [X ER 2304, ¶23], but by the Field Director's contemporaneous notes of the May 11, 2010 meeting. [X ER 2528]

Having reviewed and considered this evidence in ruling on the Union's Motion for Summary Judgement, Judge Carney specifically found that Appellant was advised by the Union that it would not arbitrate his claim on *May 11, 2010.* [I ER 39, at lines 11-14]  Appellant therefore had until *November 11, 2010* (six months later) to file his hybrid claims.  As Appellant's complaint was not filed until *November 24, 2011* [XI ER 2679], Appellant's claims in this matter are time-barred.

Appellant has offered no new evidence or explanation as to why Judge Carney's ruling on this issue was in error.  Not only does Appellant not challenge Judge Carney's finding as to the date the Union advised him it would not arbitrate his claim, Appellant does not address the statute of limitations issue *at all* in his Opening Brief.  Appellant has therefore waived this issue and argument as well.

Appellant has never claimed that the six-month statute does not apply to his first cause of action.  In fact, Appellant's counsel admitted at the hearing on the Union's Motion to Dismiss that the six-month statute applied. [I ER 31, lines 10-11]  Appellant has not argued this issue on appeal and as such at a minimum Judge Carney's Order should be sustained as to Appellant's first cause of action for

19

breach of the CBA.

Appellant did dispute below that his third cause of action was subject to the six-month limitations period. [V ER 1007-1008] However, as with so many of his arguments in his Opening Brief, Appellant simply asserts that his wrongful termination claim is not preempted based solely on a series of string cites, providing no argument or reasoning as to *why* these authorities are on point or how they support his argument. [Appellant's Opening Brief, page 66]

Plaintiff labels his third cause of action as one for wrongful termination, but it is really an action for breach of the CBA.  Appellant alleges that in early 2009, more than one year before he was terminated, he complained about perceived sanitation issues regarding the handling of meat by his fellow co-workers. [XI ER 2689, ¶19]  Appellant alleges that Stater Bros *violated the CBA* by terminating him without good cause [XI ER 2683-2685, ¶ 8], by violating CBA Article 14, Section U [XI ER 2694-2695, ¶22], and by failing to follow the tiered grievance procedure set forth in the CBA. [XI ER 2694-2698, ¶¶  22, 27, 28]

The application of  Federal labor law preemption of state claims when those claims require interpretation of Collective Bargaining Agreements is well established.  The usual starting place is *Allis-Chalmers Corp. v. Lueck* ,471 U.S. 202 (1985), the central holding of which was that when state law claims are

substantially dependant upon an analysis of the Collective Bargaining Agreement, there is preemption.  The Court stated "[W]e hold that when a resolution of a State Law claim is substantially dependant upon the analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a Section 301 claim or dismissed as preempted by Federal Labor Contract Law."  *Id.* at 220.

Thus, the key to determining the scope of preemption is whether resolution of the state law claim requires the court to construe a provision of the CBA: "in sum, we hold that an application of state law is preempted by §301 . . . if such an application requires the interpretation of the collective bargaining agreement." [*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412 (1988)].  A state's public policy, no matter how strongly reflected in its statutes or case law, is no barrier to preemption under §301 [*Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1147-1150 (9th Cir. 1988)]

In the present matter, the court below could not resolve Plaintiff's third cause of action without interpreting the collective bargaining agreement to determine: (1) whether Appellant was 'wrongfully' terminated and (2) what exactly is the scope of Article 14(U) and was it violated.

Under California law, in order to state a claim for wrongful termination in

21

violation of public policy, the plaintiff must plead and ultimately prove that: (1) the policy at issue is supported by either constitutional or statutory provisions; (2) the policy must be 'public' in the sense that it 'inures to the benefit of the public' rather than merely serving the interests of the individual; (3) the policy must have been articulated at the time of the discharge; and (4) the policy must be fundamental and substantial. [*Stevenson v. Sup. Ct.*, 16 Cal.4th 880, 889-890 (1997)].

The public policy at issue must be specifically set forth in the Complaint. As the *Stevenson* Court held, "tethering public policy to specific constitutional or statutory provisions serves not only to avoid judicial interference in the legislative domain, but also to ensure that employers have adequate notice of the conduct that will subject them to tort liability to the employees they discharge . . .." [*Stevenson*, supra, at 889)]

California courts have held that when the wrongfulness of the discharge is itself at issue, as is the case here, they are ultimately bound with the CBA and thereby preempted. [*Kelly v. Von's Companies, Inc.*, 67 Cal. App.4th 1329, 1335 (1998)].

In *Holland Quest v. St. Francis Medical Center*, 872 F.Supp. 723 (C.D. Cal 1994), a cause of action for wrongful termination and violation for public policy

22

was held preempted because the termination of the claim would necessarily require the court to examine the terms of the CBA.  Although the plaintiff, a registered nurse, asserted that her cause of action was for violations of five public policies set out in her Complaint, the only "policy" that the court could find was a reference to the California's Nursing Practices Act, which does not contain any public policy.  Thus, the court found that the plaintiff's cause of action was in essence merely a claim for wrongful termination as opposed to one invoking any type of protected public policy.  The court held that to determine whether the plaintiff was wrongfully terminated from her employment, the court would have to examine the CBA and accordingly the claim was preempted by the LARA.  [*Holland Quest*, supra at 726]

In this matter, all of the issues related to Appellant's wrongful termination claim require not only reference to but interpretation of, the CBA.  Determination of whether Appellant's termination was for "good cause" will require determination of the meaning of that term as used in Article 3 of the CBA.  That Appellant spends a number of pages in his Brief complaining of the alleged breach of the CBA [Appellant's Opening Brief, pages 60-63] only proves this argument.  Appellant's claims first require a determination of what is required under the CBA, and then a determination as to whether the CBA's requirements were

23

followed.  Only then could a determination be made as to whether the CBA was breached or not.

Appellant cannot escape the preemptive effect of §301 by casting his claims as tort claims rather than contract claims. [*Aliss-Chalmers*, supra at 210] As there is no fundamental or substantial public policy implicated by Appellant's claims, the "wrongfulness" of his termination necessarily requires the Court to interpret the CBA.  Because Appellant has provided no actual argument or authority in his Brief as to this issue, Appellant has waived this issue as well.  Accordingly, Appellant's third cause of action is preempted and as such is subject to the six-month statute of limitations period, which ran on November 11, 2010, 13 days *before* Appellant filed his complaint.

### D.    The Granting of the Union's Motion for Summary Judgement Bars Appellant's Claim of Breach of the Collective Bargaining Agreement

If this Court sustains the separate Order granting the Union's Motion for Summary Judgement [I ER 8-12], then Appellant's first cause of action for breach of the CBA is barred.

In order to provide employees with recourse when a union allegedly breaches its duty of fair representation in a grievance proceeding, "an employee may bring a suit, referred to as a 'hybrid §301/fair representation claim,' against

24

his union, his employer, or both.   To succeed on such a claim, the employee must prove that (1) the employer breached the collective bargaining agreement (the "CBA") and (2) the union breached its duty of fair representation in redressing his grievance against the employer.  [*Arnold v. 1199 SEIU*, 420 Fed. Appx. 48, 50 (2d Cir. N.Y. 2011)] This is a two-part test, requiring both conditions to be met.  As such, if the employee has no §301 claim against his union, he cannot have one against his employer.

At the May 2, 2011 hearing on that motion, Plaintiff's own counsel agreed that his first cause of action for  breach of contract against STATER was dependent on his claim against the Union:

> "Another thing that's important in this hybrid claim is that if the plaintiff loses on the breach of the duty of fair of fair representation, he does not have the right to sue the employer for breach of the collective bargaining agreement.  They are linked together.  As I have told people over the years, there is an eclipse there.  And if you can't show the union did something wrong, you never get to the employer for breach of the collective bargaining agreement because the union is the exclusive bargaining representative of that particular employee." [I ER 22 line 19, to I ER 23, line 2]

## E.    Appellant's Termination Was Not Wrongful

Finally, STATER had a legitimate, nonretaliatory reason for terminating Appellant: customer complaints.   STATER'S Rules & Regulations specifically state that "Rudeness, inattention, or customer complaints will not be tolerated."

[SER 7] Appellant was aware of, and understood, STATER'S Rules & Regulations. [SER 14 ]  He understood and admitted at deposition that he could be terminated for poor customer service. [SER 20 ]  Appellant further admitted that it would be inappropriate to tell a customer that he was too busy to help them. [SER 32-33]  In Appellant's own words, doing so would be "way against the rules . . . It's like putting a bullet in your head." [SER 35, lines 7-8]

As noted previously, Appellant does not dispute the existence of the numerous verbal reprimands in his file nor that he had received written warnings for unprofessional conduct and customer complaints prior to March 2010.  Rather, he argues that these reprimands were "stale" [Appellant's Opening Brief, page 31] though he fails to explain how that matters.  Appellant does not dispute that STATER received two almost simultaneous customer complaints about him.  In fact, he *admitted that his suspension and ultimate termination was due to customer complaints*. [SER 88, line 5-7]

Once again, it is critical to note that Appellant does not dispute that the customer complaints in March 2010 were made, he only claims that they were *inaccurate*.  Thus, by Appellant's own admissions, STATER had a valid, non-discriminatory, non-retaliatory reason for his termination, and there is no basis in law or fact for Appellant to claim that his termination was wrongful.

26

## VIII.  CONCLUSION

In the immortal words of the Bard, Appellant's Brief is "full of sound and fury, signifying nothing." [Macbeth, Act V, Scene V] Appellant has offered no argument or explanation as to why Judge Carney's Order below was in error, nor has he presented this Court with any new evidence or argument justifying reversal.

Judge Carney summed up this entire matter quite succinctly in his Order: "A deal is a deal." [I ER 7] Appellant has provided no reason why he should be let out of the deal he made, and for all of the reasons set forth above this Court should affirm Judge Carney's Order granting STATER'S Motion for Summary Judgement.

STATER respectfully submits that the Court should determine whether or not this appeal is frivolous and whether it should award STATER "just damages and single or double costs" pursuant to Fed. R. App. P. 38.


DATED: January 24, 2013            VARNER & BRANDT LLP


                                   By:       /s/  Brendan W. Brandt
                                         Brendan W. Brandt, Esq.
                                         Attorneys for Defendant-Appellee,
                                         STATER BROS. MARKETS

27

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App.
P. 32(a)(7)(B) because this brief contains 6025 words, excluding the parts of the
brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements Fed. R. App. P.
32(a)(5) and the typeface requirements of Fed. R. App. P. 32(a)(6) because it has
been prepared in a proportionally spaced typeface using WordPerfect X4 in 14
point, Times New Roman font.


Dated: January 24, 2013              By:    /s/ Andrew Ross
                                     Andrew Ross, Esq.
                                     Attorneys for Defendant-Appellee,
                                     STATER BROS. MARKETS

28

## STATEMENT OF RELATED CASES

No other cases in this Court are deemed related to this matter pursuant to

Ninth Circuit Rule 28-2.6.


Dated: January 24, 2013            By:    /s/ Andrew Ross
                                   Andrew Ross, Esq.
                                   Attorneys for Defendant-Appellee,
                                   STATER BROS. MARKETS

29

CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: January 24, 2013                    By:    /s/ Andrew Ross
                                           Andrew Ross, Esq.
                                           Attorneys for Defendant-Appellee,
                                           STATER BROS. MARKETS